490 P.2d 8

STATE of Arizona, Appellee,

v.

Eric DeLUNA, Appellant.

No. 2172.

Supreme Court of Arizona, In Division.

Nov. 5, 1971.

Gary K. Nelson, Atty. Gen., Phoenix, John S. O'Dowd, Asst. Atty. Gen., Tucson, Albert M. Coury, Asst. Atty. Gen., Phoenix, for appellee.

David M. Lurie, Phoenix, for appellant.

LOCKWOOD, Justice.

Eric DeLuna was charged with assault with a deadly weapon, kidnapping with intent to commit robbery, robbery and theft of a motor vehicle. He was tried and found guilty on all four counts and sentenced to serve a term of years in the State Prison.

At approximately 11 p. m. on February 6, 1969 James Walters testified that while he was stopped at the intersection of Broadway and Rural [Road] in Tempe a man, later identified as DeLuna tapped on the window of his car with a revolver and got into his car. The man took about $40.00 from Walters' wallet, took possession of the car and drove for about one and one half hours. He then ordered Walters out of the car and drove away.

Walters notified the police of the incident on February 7, 1969, giving a description of his car. On the same day Officer Ambrosio Lopez stopped a car which was later discovered to be Walters' car. The driver of the car was observed proceeding "on the wrong side of the [Williams Field] road". The officer requested that the individual accompany him to the patrol car. While the officer was preoccupied with a radio broadcast the man asked if he could step outside to urinate. The officer granted his request and "that was the last [he] saw of him. He took off running."

On April 19, 1969, at his place of employment Walters recognized the defendant and notified the police. The defendant was arrested on the same day and placed in jail where Officer Lopez identified him as

the man he had stopped on February 7, 1969, driving Walters' car. There was uncontradicted evidence presented at trial that when the identification was made in the Tempe Jail the defendant was not represented by counsel and the procedure was unduly suggestive.

At trial the court ruled out of the presence of the jury that the identification of the defendant made in jail was unduly suggestive and therefore excluded the evidence of this identification from the jury. The in-court identification of DeLuna made by Officer Lopez, however, was not held to have been tainted by the prior identification.

The sole question presented to this Court is whether the trial court erred in concluding that the in-court identification was not tainted by the prior identification. The law which governs the determination of this question is found in State v. Dessureault, 104 Ariz. 380, 453 P.2d 951 (1969). In that case we held that the "in-court identification was by clear and convincing evidence not 'come at by exploitation of [the] illegality.'" 104 Ariz. at 385, 453 P.2d at 956. We are of the opinion that the present case falls within the ambit of *Dessureault* and therefore hold that the prior identification did not taint the in-court identification.

On cross-examination Officer Lopez was asked:

"Q. You are sure that other identification (referring to the illegal identification) doesn't influence you now?

"A. Well, they helped, I mean, didn't influence me.

"Q. You would have a little more difficult time on February 7 when you saw the fellow not very well, until today, be more difficult, wouldn't it?

"A. I wouldn't know.

&ast; &ast; &ast; &ast; &ast; &ast;

"Q. It would reinforce your opinion; is that right?

"A. Well, it helped when I saw him. Right."

Although this testimony indicates that Lopez vacillated slightly on the question of whether his identification was influenced by the illegal identification, this does not compel us to decide that the in-court identification was tainted. We held in *Dessureault* "reinforcement of the witness' original identification honestly admitted, is inherent in every case." 104 Ariz. at 384, 453 P.2d at 955. Officer Lopez also testified that his in-court identification of the defendant was based upon his recollection of the defendant's "face" when he stopped him on February 7, 1969:

"Q. Now, how long were you with the defendant during this first time you saw him?

"A. Oh, I would say about 10 minutes.

"Q. Did you have a look—get a look at his face?

"A. Right.

"Q. Could you identify him by his face at that time?

"A. Right, yes."

On cross examination he was asked:

"Q. You mean to say you could remember from February 7 to October 14 and be absolutely certain this is the same fellow?

"A. Well, I don't remember. I don't forget his face. I saw his face."

This testimony combined with the fact that Officer Lopez had sufficient time to observe the defendant and the fact that the defendant's face was not lacking distinctive character justifies the court below in finding by clear and convincing evidence that the in-court identification was not tainted by the illegal identification.

The judgment of the trial court is affirmed.

STRUCKMEYER, C. J., and UDALL, J., concur.